334 So.2d 692 (1975)
Laura L. Dupre CALLAIS et al.
v.
ALLSTATE INSURANCE CO.
No. 56120
Supreme Court of Louisiana.
November 4, 1975.
Dissenting Opinion December 17, 1975.
On Rehearing June 21, 1976.
*693 Charles E. Leche, Normann & Normann, New Orleans, for plaintiffs-applicants.
Larry P. Boudreaux, Leslie J. Clement, Jr., Porteous, Toledano, Hainkel & Johnson, Thibodaux, for defendant-respondent.
Allen R. Fontenot, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for amicus curiae.
J. W. Jones, Bodenheimer, Jones, Klotz & Simmons, Shreveport, amicus curiae for Allstate Ins. Co.
Raymond C. Vinet, Sr., amicus curiae for Commissioner of Insurance.
J. Barnwell Phelps, Esmond Phelps, II, Harry A. Rosenberg, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, amicus curiae for T & P Ry Co. & M P RR Co.
James J. Davidson, James J. Davidson, III, L. Lane Roy and Richard C. Meaux, Davidson, Meaux, Onebane & Donohoe, Bernard, Torian & Diaz, Lafayette, amicus curiae for S P Transportation Co., and others.
BOLIN, Justice.
Lloyd J. Guidry and his wife, Carol Ann Guidry, were killed in a one car accident. Mr. and Mrs. Guidry were survived by one child, Roxanne Guidry, born August 11, 1972. The child was not a passenger in the car at the time of the fatal accident. The provisional tutrix instituted suit on behalf of the minor against Allstate Insurance Company, the insurer of the automobile driven by Mrs. Guidry, for damages resulting *694 from the death of Roxanne's mother and father. The trial court found the accident was caused solely by the fault of Mr. Guidry. Damages were awarded to the child for the loss of her mother but her demands for the damages for the loss of her father were denied. The provisional tutrix for the minor appealed to the Court of Appeal seeking reversal of that portion of the judgment denying the minor recovery for the negligent death of her father. The Court of Appeal affirmed (308 So.2d 342) and this Court granted writs (310 So.2d 849). We reverse and remand.
Before this Court, it is not disputed the accident and death were caused solely by the fault of Lloyd Guidry. There is also no question of insurance coverage.
The question for decision is whether a child may recover for damages she suffers as a result of the death of a parent when the death was caused solely by the negligence of the deceased parent.
The article in our Civil Code establishing delictual liability is La.C.C. art. 2315. The predecessor of our present article 2315 in the Code of 1825 was article 2294, which reads as follows:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
This provision was taken directly from article 1382 of the Code Napoleon of 1804, and it remains in our Code today, absolutely unaltered, as the first paragraph of article 2315.
Under French law, anyone who was materially affected when the death of a person was the result of someone's fault, could demand reparation for the damages he suffered because of the death. 2 M. Planiol, Civil Law Treatise, § 868 (La.St.L.Inst. transl. 1959). The theory embodied in art. 1382 of the Code Napoleon, and presumably adopted by our redactors in 1825, is that whenever one person acts wrongfully and thereby injures another, the actor must indemnify the damages party to the extent of his injury. Thus, this generalized tort action affords recovery for any damages resulting from a death against any person whose negligent act causes the death. King v. Cancienne, 316 So.2d 366 (La.1975); L. Oppenheim, The Survival of Tort Actions and the Action for Wrongful Death A Survey and a Proposal, 16 Tul.L.R. 386 (1942). It seems that, under this doctrine, absent any procedural bar, a child should be able to recover against his father's succession for any damages he incurs when his father deprives him of love, affection, support, and the like, by negligently killing himself.
La.C.C. art. 2315 has been amended a number of times and no longer consists entirely of the simple statement of principle discussed above. This Court recently reviewed the history of this article and the reasons for its amendment in King v. Cancienne, supra. We noted there that in 1851, this Court handed down the decision in Hubgh v. New Orleans and Carrollton Railroad Company, 6 La.Ann. 495 (1851), holding that the action of wrongful death was not sanctioned by article 2315. Partially in response to this pronouncement by the Court, the legislature amended article 2315 by Act 223 of 1855, creating the socalled "survived action" allowing certain named survivors of a deceased to sue on his behalf to recover for damages sustained by the deceased on account of the wrongful act of another. Later, by Act 71 of 1884, the legislature specifically reinstated the action by certain survivors for their own damages resulting from another's death that is wrongfully caused. Since 1884, article 2315 has been amended several times, but the basic structure of the article as remained the same, so that, in whole, it appears in the Code today as follows:
Art. 2315. Liability for acts causing damage; survival of action
Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

*695 The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
As used in this article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectively.
We have already determined that if the first paragraph of article 2315 controls in the case before us, Mrs. Callais, as provisional tutrix, could recover from Allstate Insurance Company for the losses suffered by Roxanne Guidry on account of her father's negligence in killing himself and depriving her of all the things she would have enjoyed had he continued to live. However, we shall assume, without deciding, that the legislature, though responding to an incorrect court decision, has established an exclusive method for asserting damages for wrongful death in the third paragraph of article 2315. Our task then becomes one of statutory interpretation to determine whether the action asserted here may be brought within the terms of that part of the provision.
Allstate argues that the third paragraph of article 2315 creates two rights of action, but only one cause of action. It bases this conclusion on the following language:
"* * * The survivors in whose favor this right of action [right to sue for damages suffered by the deceased] survives may also recover the damages which they sustained through the wrongful death of the deceased. * * *"
Allstate infers from this wording that only when the named survivors are entitled to recover for the injuries suffered by the deceased (i.e. when deceased could have recovered for his own injuries had he lived) may they recover for their own damages as a result of the death of the deceased. In support of this position, it cites the case of Reed v. Warren, 172 La. 1082, 136 So. 59 (1931).
We find no merit in this contention. The language quoted above means no more than that the named survivors upon whom devolve the right to assert deceased's cause of action for his injuries are also the parties who may sue for their own injuries resulting from the death.
It is clearly erroneous to characterize the "survived action" and the wrongful death action as a single cause of action. A cause of action is variously defined as "concurrence of the facts giving rise to an enforceable claim, * * * facts which give rise to one or more relations of right-duty between two or more persons, * * * ground on which an action may be maintained or sustained, * * *." Black's Law Dictionary 279-80 (Rev. 4th ed. 1968). It is true that the same operative facts giving rise to the survivors' right *696 to recover on behalf of the deceased also entitle them to recover on their own behalf. However, the injury done and the parties damaged are different. Each party injured by the death has a separate cause of action for a different amount, depending upon the particular injury done to him as a result of the death. Likewise, each of these causes of action is entirely separate from the cause of action belonging to the deceased before his death for his own damages, which passes to the survivors by virtue of the operation of article 2315. Thus, we feel that both by statutory interpretation of the two segments of article 2315, paragraph three (which were adopted by the legislature at different times), and by logical analysis, the "survived action" and the wrongful death action are entirely separate and independent of one another.
The Reed case, supra, does include language which seems to support defendant's analysis of paragraph three of article 2315. However, we feel the Court in Reed intended to hold only that, as a matter of judicial efficiency and convenience to the defendant, all parties entitled to bring the wrongful death action and the "survived action" must join in a single suit and assert all their claims at the same time. See, Theis, Zahn v. International Paper Co.: the Non-Aggregation Rule in Jurisdictional Amount Cases, 35 LLR 88, 105 and fn. 88 (1974).[1]
Moreover, we are convinced that the legislature did not intend that the "survived action" and the wrongful death action should depend upon one another, because such an interpretation of the third paragraph of article 2315 could lead to unjust results. For instance, if a person were injured seriously by the wrongful act of another and, before dying, compromised his own claim against the tortfeasor, it cannot be that his survivors would thereby be barred from asserting their claims for their own injury resulting from the death. This would be the result were we to adopt defendant's construction of article 2315.
Thus, we hold that when a person has negligently caused his own death, those survivors named in article 2315, paragraph three have a cause of action for the damages they have suffered as a result of his death. Of course, if there were an interfamilial privilege which prevented suit by the survivor, perhaps he would be barred from bringing action. However, it is established that a child may sue the administrator of his parent's estate. Ruiz v. Clancy, 182 La. 935, 162 So. 734 (1935). Moreover, where, as here, the survivor brings a direct action against the insurer, no procedural bar would apply. Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191 (1935); Le Blanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245 (1943).
Allstate cites one Louisiana Supreme Court case and several lower court decisions which it maintains are contrary to the result we reach here. Vitale v. Checker Cab Co., Inc., 166 La. 527, 117 So. 579 (1928); Williams v. J. B. Levert Land Company, Inc., 162 So.2d 53 (La.App. 1st Cir. 1964); Foy v. Ed Taussig, Inc., 220 So.2d 229 (La.App. 3rd Cir. 1969); and Crum v. Holloway Gravel Co., Inc., 273 So.2d 566 (La.App. 1st Cir. 1973) hold that recovery by survivors for wrongful death is barred by the decedent's contributory *697 negligence. While we distinguish these cases from the present one in that each of them involved a death caused, at least in part, by the negligence of a third party, we recognize that their underlying rationale is contrary to our holding here.
The majority opinion in Vitale relies entirely on a theory of imputed contributory negligence, long disavowed by the jurisprudence of this state. It is clear that negligence may not be imputed to one injured by the wrongful act of another in order to bar his recovery, merely because the injury was also partially caused by one for whom the injured person may be vicariously liable. Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292 (1945). Moreover, the Vitale majority recognized the incongruity between imputing contributory negligence to a survivor when he seeks to recover for the death of the contributorily negligent party and the failure to impute such negligence when the plaintiff is seeking to recover for his own injuries. The Court merely stated:
We shall not attempt a differentiation of the two lines of jurisprudence, nor venture a suggestion of any cause or reason for the difference.
It suffices to say, for the purposes of the present case, that the doctrine is too well settled to depart therefrom, and there is no greater reason for overruling one line of decisions than the other. 117 So. at 582
We disagree with the very foundation upon which the Vitale case is based. Contributory negligence is a doctrine developed to prevent recovery when the injured party has wrongfully contributed to his own damage. The concept of vicarious liability exists in order to insure that one injured by a party for whom another is responsible will be able to recover against the one in charge of the tortfeasor. To "impute contributory negligence" is to mix two unrelated doctrines into an artificial hybrid which does not further the policies underlying either vicarious liability or contributory negligence.
Apparently recognizing the weakness of the majority's reasoning in Vitale, Allstate points to the concurring opinion of Chief Justice O'Niell in that case. That opinion says no more than the wife's right of action for wrongful death "* * * ought to depend upon whether the husband would have had a right of action to claim damages for the physical injuries suffered by him if they had not been fatal. * * *" 117 So. at 583. The only explanation offered in support of this conclusory statement is that the survivor's right to recover derives from the injury suffered by the deceased. However, Chief Justice O'Niell does not explain why the derivative nature of the cause of action should condition the availability of the survivor's action for his own injuries upon the deceased's own blamelessness.
Because we are not faced with a situation in which a third party has partially caused the death of the deceased, and thereby is in effect a joint-tortfeasor with the deceased in injuring the survivor, we need not consider how liability should be apportioned in such a case. However, we overrule the Vitale case insofar as it is in conflict with our reasoning herein.
For the reasons assigned, the judgment of the Court of Appeal is hereby set aside and the case is remanded for proceedings consistent with this decision.
Reversed and remanded.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I respectfully dissent. I would affirm the judgments of the trial court and the court of appeal, which held that plaintiff *698 was not entitled to recover the damages she sustained owing to her father's death.
Article 2315 of the Civil Code does not permit the beneficiaries designated therein to recover damages whenever a death occurs, but only when such a death is is caused by the violation of a duty owed to the decedent by another, not one that is caused, in whole or in part, by the decedent's own intentional or negligent act.
SUMMERS, Justice (dissenting).
I do not believe that recovery for decedent Lloyd J. Guidry's death can be allowed to his child Roxanne when he could not have recovered for his injury had he lived. There simply was not tortious conduct toward him which brought about his death. His death was, therefore, not wrongful as Article 2315 of the Civil Code clearly requires.
The right to recover damages for an offense or quasi offense on the death of the injured party is inherited by his legal, instituted, or irregular heirs. In this case the child inherits the right to recover the damages to which her father was entitled prior to his death. Obviously, he had no right to recover from anyone, for he was the cause of his damage and injury. He could not recover from himself.
What, then, is the cause of action the surviving child can assert. Any right she has must be based upon the wrongful death of her father. For his death to be wrongful the action of someone else is necessary to constitute a delict, a wrong. The wrong must take place between persons juridically strangers to each other. Reserve Insurance Co. v. Fabre, 243 La. 982, 149 So.2d 413 (1963). There must have been a breach of duty to the decedent. No such breach occurred here. Since no delict occurred in this case no cause of action became vested in the surviving child, and a fortiori, no recoverable damage resulted in legal contemplation.
Thus if Guidry injured himself through his own negligence he created no cause of action in his own favor. And since no cause of action was created, none could be inherited, for the survival and wrongful death remedies are not two separate and independent actions. If a cause of action was created at all, only one was created. In this case no cause of action was created, and the fact that the child suffers damage does not in itself change that fact. "The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased." La.Civ.Code art. 2315. In the absence of such wrongful death no cause of action accrues, and the existence of damages is simply noncompensable.
It is stretching logic and principles of statutory interpretation to say that by reason of his unintentional negligence which brought about his own death he gave his surviving child a cause of action for damages, for she was thereby deprived of his support. What if Guidry had maimed himself in this accident, had survived and was no longer able to support his dependent child? Would she have a cause of action against him for loss of support? Or does the theory of this case apply only when there is an insurance company involved?
And what does this case do to automobile liability insurance coverage? The effect is to convert an automobile liability policy into life insurance, insuring the life of the named insured against his own negligence and damage to himself in addition to insuring against claims of third persons.
The decision disrupts settled concepts of wrongful death suits and brings about profound changes in our law, the ultimate effects of which are neither contemplated nor provided for.
It is not far-fetched to conclude that the majority opinion has reached a result which is unique in the legal systems of the fifty states of the Union. Until now it has *699 been universally recognized that "in the absence of a statute changing the rule, contributory negligence which would have barred an action by decedent will bar an action for his death." 25A C.J.S. Death § 46 (1966).
The American Law Institute, Restatement of the Law of Torts 2d, Section 494 states: "The plaintiff is barred from recovery for an invasion of his legally protected interest in the health or life of a third person if the negligence of such third person would have barred his own recovery." If we transpose and paraphrase this principle and apply it to the facts of this case we must say that Roxanne is barred from recovery for an invasion of her legally protected interest in the health or life of her father Lloyd Guidry if the negligence of her father would have barred his own recovery.
I respectfully dissent.

ON REHEARING
SANDERS, Chief Justice.
We granted a rehearing in this case because of convincing allegations that our original decision was erroneous and would produce unfavorable consequences on the law of delictual responsibility in Louisiana. In reconsidering the case, we have been greatly assisted by numerous amicus curiae briefs from all segments of the legal profession.
The facts may be briefly summarized. On the night of December 1, 1972, Lloyd J. Guidry and his wife, Carol Ann Guidry, were killed when their automobile veered off the highway. It is undisputed that the fatal accident was caused solely by the improper driving of Mr. Guidry. Their only child, Roxanne Marie Guidry, was not in the automobile, having been left in the care of her grandmother, Mrs. Laura L. Dupre Callais. As tutrix, Mrs. Callais instituted suit on behalf of the minor daughter against Allstate Insurance Company, the father's automobile liability insurer, to recover damages for the death of both the mother and the father. The trial court awarded damages for the loss of the mother but denied damages for the loss of the father. The tutrix appealed, seeking a reversal of that portion of the judgment denying the minor recovery for the death of her father. The Court of Appeal affirmed. 308 So.2d 342. On application of the tutrix, we granted certiorari to review the Court of Appeal judgment. 310 So.2d 849.
The question is whether a child may recover for damages sustained as a result of the death of a parent when the death is caused solely by the deceased parent's lack of care for his own safety. After reconsideration, we think not.
Article 2315 of the Louisiana Civil Code is the foundation of delictual liability in Louisiana. That article provides:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
"The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
"The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the *700 wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not." (Italics ours.)
Article 2315 provides for two types of death actions. One type, commonly called a survival action, is for the damages sustained by the victim for which he could have recovered had he lived. The other, commonly called a wrongful death action, is for damages to survivors occasioned by the victim's death. See King v. Cancienne, La., 316 So.2d 366 (1975); W. Malone and L. Guerry, Studies in Louisiana Torts Law, pp. 610-611 (1970); Oppenheim, The Survival of Tort Actions and the Action for Wrongful Death, 16 Tul.L.Rev. 386, 409 (1942).
The present action is one for wrongful death. The tutrix seeks the damages sustained by the minor daughter on account of her father's death.
Historically, a civil wrong is an act which causes harm to another. See, Catala and Weir, Delict and Torts: A Study in Parallel, 37 Tul.L.Rev. 573, 584-585 (1963). In the context of Article 2315, it is evident that wrongful death is a relational concept. It embraces conduct that causes the death of another. It is bilateral in the sense that two parties are involved: the actor, who causes death, and the victim, whose death gives rise to the cause of action.
Recently, reviewing Article 2315 in King v. Cancienne, supra, this Court stated:
". . . The purpose of that provision in France and in Louisiana was to provide an action for personal damage resulting from the death of another through the delictual action of a third party."
See also Reserve Insurance Company v. Fabre, 243 La. 982, 149 So.2d 413 (1963).
Plaintiff contends in effect, however, that the relational concept is satisfied when the father negligently kills himself, thus causing economic and other damage to his child. Plaintiff points to the broad language of Article 2315. On original hearing, we accepted this argument. We now think we erred.
The essential elements of a cause of action under Article 2315 are fault, causation, and damage. Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971). Fault, of course, includes negligence. LSA-C.C.Art. 2316.
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It is the breach of a duty, statutory or non-statutory, owed to another to protect that person from the particular harm that ensued. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Prosser, Law of Torts § 36, pp. 192-197 (4th ed. 1971); Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956).
In Hill v. Lundin & Associates, Inc., supra, this Court stated:
"`All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury.'"
In the present case, the father's driving which shunted his automobile off the highway was doubtless a violation of the Louisiana Highway Regulatory Act (LSA-R.S. 32:1 et seq.). If, however, a non-statutory *701 duty was violated, a duty analysis is equally appropriate.
The duty to drive one's automobile with due care is designed to protect other persons and property on or near the highway. See Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). A driver's child at home does not fall within the class of persons protected by his duty as an automobile operator. A parent, likewise, has no general duty to protect a child against the risk of the parent's own death. Hence, as to the daughter, there was no negligence or fault. See Hill v. Lundin & Associates, Inc., supra. Since the death was not wrongful within the meaning of Article 2315, it provides no basis for liability.
The following views expressed by this Court in the landmark case of Moulin v. Monteleone, 165 La. 169, 115 So. 447 (1927), almost a half-century ago, are still applicable today:
"It is argued for the appellant that he has a right of action under the broad statement in article 2315 of the Civil Code that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. It is well settled, however, that that broad language, which first appeared as article 16 of title 4, Book 3, of the Act of March 31, 1808, called the `Digest of the Civil Laws in Force in the Territory,' and sometimes called the Civil Code of 1808, was only declaratory of a very general and fundamental principle of justice, and was not intended to give a cause or right of action for every grievance. . ."
The decision in Vitale v. Checker Cab Co., Inc., 166 La. 527, 117 So. 579 (1928), relied upon throughout this litigation, is inapposite. That case involved an action by the wife for the wrongful death of her husband. The death was caused by the concurrent negligence of the husband and a third party. The wrongful death action was against the third party.
Thus, we hold that a child may not recover damages for a parent's death when the death resulted solely from the deceased parent's lack of care for his own safety.
For the reasons assigned, the judgment of the Court of Appeal is affirmed at plaintiff's costs.
DIXON, J., dissents.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I agree with the result reached in the majority opinion but concur for reasons assigned in my dissent to the original opinion.
NOTES
[1] In discussing whether plaintiffs in a suit for wrongful death and survival damages may aggregate their claims for federal jurisdictional purposes, which requires something very close to a single cause of action, Professor Theis writes the following: "Their [the survivors] compulsory joinder under state law is a procedural rule which does not affect the nature of the interest asserted by each one. Their rights are `common' only in the sense that each relies on a single incident to recover; `undivided' only in the sense that they must compulsorily join under state procedure". At footnote 88, it is stated: "* * * If anything Reed v. Warren seems to say that its rule of compulsory joinder is based, at least in part, on considerations of convenience to the defendant, not the nature of the interest asserted by the plaintiffs * * *" For a critical analysis of the Reed case, see McMahon, Parties Litigant in Louisiana, 13 Tul.L.R. 385, 407 (1939).